UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RENATA TEYTELBAUM,

        Plaintiff,

v.                      Case No.  8:09-cv-1231-T-33TBM

UNUM GROUP and UNUM LIFE
INSURANCE COMPANY OF AMERICA,

        Defendants.
_____/

**ORDER**

This cause is before the Court pursuant to Unum Group's Motion to Dismiss (Doc. # 27) and Unum Life Insurance Company of America's Motion to Dismiss, or in the Alternative, Motion to Strike Teytelbaum's Claim for Recovery Benefits (Doc. # 28), both filed on August 17, 2010.  Teytelbaum filed her memoranda in opposition to the motions on August 31, 2010. (Doc. # 31, 32).  For the reasons that follow, both motions to dismiss are denied.

**I.   Factual Background**

Unum Life issued an individual disability income insurance policy to Teytelbaum, a physician, with an effective date of September 1, 1991. (Doc. # 1 at ¶ 10).  Teytelbaum sustained neck and back injuries on December 15, 2001, when she was involved in a car accident. (Id. at ¶ 48).

1

Teytelbaum sought disability benefits due to her injuries sustained in the accident, and "Teytelbaum was paid Total Disability benefits from February 15, 2002 through March 17, 2002." (Id. at ¶ 27). Thereafter, Teytelbaum was paid "Residual Disability Benefits" under the policy and was afforded a premium waiver from March 17, 2002, through March 1, 2006. (Id. at ¶ 28). "Unum terminated Teytelbaum's Residual Disability Benefits as of March 1, 2006, by letter dated June 27, 2006, claiming that Teytelbaum could perform the duties of a family practice physician on a full-time basis, and that Teytelabum no longer met the terms and provisions for continued payment of residual or premium waiver benefits under the [p]olicy." (Id. at ¶ 32).

Teytelbaum claims that she is entitled to further benefits under the policy, including but not limited to "Recovery Benefits," and that Defendants, acting collectively, have breached the contract for the provision of insurance by failing to provide her such benefits.

Teytelbaum initiated this action on June 30, 2009, when she filed her one count complaint against Unum Group and Unum Life alleging breach of contract. (Doc. # 1). Teytelbaum attached a partial copy of her insurance policy to the complaint. Throughout the complaint, Teytelbaum refers to the

2

Defendants interchangeably as "Unum" and has further blurred the distinction between the Defendants by alleging: "Defendant Unum Life Insurance does not operate independently of Defendant, Unum Group and does not control its own insurance claim handling activities." (<u>Id.</u> at ¶ 5).  Teytelbaum further alleges that "Unum Group and/or Unum Life Insurance acting under the direction and control of Unum Group" adjudicated Teytelbaum's claims for benefits under the policy.  (<u>Id.</u>)

Unum Group responded to the complaint by filing a Rule 12(b)(6) motion to dismiss, alleging that, as a parent corporation, it is not liable for the actions of its subsidiary, Unum Life. (Doc. # 27).  Unum Group contends that "nothing in the [c]omplaint establishes that Unum Group is a party to the policy, or otherwise, has any obligations under the policy's terms." (<u>Id.</u> at 2).

In addition, Unum Life filed a Rule 12(b)(6) motion to dismiss, alleging that Teytelbaum's breach of contract claim is preempted by the Employee Retirement Income Security Act of 1974, ERISA, 29 U.S.C. § 1001, et seq.  Unum Life also argues, in the alternative, that, if the complaint is not entirely dismissed, Teytelbaum's request for Recovery Benefits under the policy should be stricken because she has not returned to her regular occupation in a full time capacity.

## II.  __Legal Standard__

On a motion to dismiss, this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff.  Jackson v. Bellsouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004).  Further, this Court favors the plaintiff with all reasonable inferences from the allegations in the complaint.  Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990) ("On a motion to dismiss, the facts stated in [the] complaint and all reasonable inferences therefrom are taken as true.")

However, the Supreme Court explains that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)(internal citations omitted).  Further, courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

## III. __Analysis__

### A.   __ERISA Preemption__

Teytelbaum alleges that Unum Group and Unum Life breached

4

the contract for insurance set forth in the policy by refusing to pay Teytelbaum's claims for benefits in full after a 2001 automobile accident.

Unum Life claims that the insurance policy under which Teytelbaum seeks relief is governed by ERISA, that Teytelbaum's claims are preempted by ERISA, and accordingly, that Teytelbaum's complaint must be dismissed without prejudice so that she may file an ERISA action.  Teytelbaum, on the other hand, contends that discovery is needed in order to determine whether her individual disability insurance policy was an ERISA or non-ERISA plan.

Whether an insurance policy falls within the ambit of ERISA depends on whether the insurance policy qualifies as an "employee welfare benefit plan."   Under ERISA the term "employee welfare benefit plan" is defined as:

> any plan, fund, or program . . . established or maintained by an employer or by an employee organization . . . for the purpose of providing its participants or their beneficiaries, through the purchase of insurance or otherwise, . . . medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, death, or unemployment, or vacation benefits . . . .

29 U.S.C. § 1002(1).

The Eleventh Circuit has stated that qualifying as an employee welfare benefit plan governed by ERISA requires: "(1)

a 'plan, fund, or program' (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits . . . (5) to participants or their beneficiaries." <u>Donovan v. Dillingham</u>, 688 F.2d 1367, 1371 (11th Cir. 1982). An ERISA plan "is established if from the surrounding circumstances a reasonable person could ascertain the intended benefits, a class of beneficiaries, the source of financing, and the procedures for receiving benefits." <u>Moorman v. Unum Provident Corp.</u>, 464 F.3d 1260, 1265 (11th Cir. 2006).

However, the Department of Labor has issued "safe harbor" regulations providing "that group insurance offered to workers through their place of employment will *not* be deemed an ERISA plan if the insurance program satisfies certain enumerated criteria." <u>Randol v. Mid-West Nat'l Life Ins. Co. of Tenn.</u>, 987 F.2d 1547, 1549 (11th Cir. 1993)(emphasis in original). Teytelbaum appears to contend that the plan at issue is a non-ERISA plan under the aforementioned safe harbor. The safe harbor regulations, which enumerate these criteria, provide that:

For purposes of Title I of the Act and this chapter,

6

the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which

(1)  No contributions are made by an employer or employee organization;

(2)  Participation in the program is completely voluntary for employees or members;

(3)  The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and

(4)  The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with the payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j).  Failure to satisfy any one of the four safe harbor provisions "closes the safe harbor and exposes a group insurance program, if it otherwise qualifies as an ERISA program, to the strictures of the Act." Johnson v. Watts Regulator Co., 63 F.3d 1129, 1133 (1st Cir. 1995). Teytelbaum also contends that, under Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon, 541 U.S. 1, 21 (2004), no plan has been established or maintained by her employer, because the plan at issue only covers Teytelbaum, as a business owner.

Unum Life, extrapolating from its exhibits, argues that Mease Clinic, Teytelabum's prior employer, created the plan,

paid the premiums, and endorsed the policy.  However, at this stage of the proceedings, it is improper for the Court to rely on Unum Life's exhibits.  The Court must limit its review to the complaint and the policy attached thereto.  The documents that Unum Life relies upon, which appear to be taken from Teytelbaum's underwriting file, transcend the realm of Rule 12(b)(6) review, and will not be considered.

As argued by Teytelbaum, "ERISA preemption involves a fact-intensive analysis for which discovery is necessary." (Doc. # 31 at 6).  This Court must determine whether an ERISA plan has been established.  In Butero v. Royal Maccabees Life Ins. Co., 174 F.3d 1207, 1215 (11th Cir. 1999), the court set forth a seven-pronged test for ascertaining whether an employee welfare plan is established, which requires the court to consider: (1) the employer's representations in internally distributed documents; (2) the employer's oral representations; (3) the employer's establishment of a fund to pay benefits; (4) actual payment of benefits; (5) the employer's deliberate failure to correct known perceptions of a plan's existence; (6) the reasonable understanding of employees; and (7) the employer's intent.

Thus, as correctly argued by Teytelbaum, "the difference between a policy purchased by an individual and one purchased

for the individual through an ERISA welfare benefits plan is one of fact, not law." (Doc. # 31 at 7).  This is particularly so under the facts of this case involving a solo family practice physician and her individual disability insurance policy.  See e.g., Gatewood v. Life Ins. Co. of N. Am., 75 F. Supp. 2d 1347, 1350-51 (M.D. Fla. 1999)(Preemption of a group ERISA plan that is later converted into an individual plan is measured by factors which serve the legislative purposes of the ERISA statute.  "[W]hat matters for ERISA purposes is not the nature of the conversion policy but rather the nature of the employer's ongoing administrative and financial ties to the policy.  If no such ties exist, the policy should not be subject to ERISA regulation.")

The complaint does not allege that Mease Clinic managed or exercised control over Teytelbaum's plan nor does it allege that Mease or any employer made contributions to the policy, that Teytelbaum's participation was voluntary or involuntary or that Teytelbaum's employer received consideration in connection with the program.  Based on the four corners of the complaint, the Court simply cannot conclude that the policy at issue falls within the ambit of ERISA and, therefore, the Court must deny Unum Life's motion to dismiss the complaint. The  Court  will  be  best  equipped  to  make  preemption

determinations after the parties have conducted discovery and upon submission of a motion for summary judgment.

Furthermore, the Court also denies Unum Life's request that the Court strike Teytelbaum's request for Recovery Benefits under the policy.  At this stage of the proceedings, the Court will allow Teytelbaum to plead her claims for relief in the alternative and will not strike any claims for relief on the basis that such claims are inconsistent with each other or with other allegations contained in the complaint. Accordingly, Unum Life's motion is denied.  However, Unum Life may reassert its arguments in a timely filed motion for summary judgment.

> **B.    Unum Group's Motion to Dismiss**

Unum Group seeks to be dismissed from this case on the basis that it is not a party to the policy and it has not agreed to be bound by the terms of the policy.  Unum Group further asserts that Teytelbaum has not established that it is appropriate to pierce the corporate veil between parent and subsidiary in order to hold Unum Group responsible for Unum Life's obligations under the policy.

Under Florida law, a parent corporation and its subsidiary are separate and distinct legal entities.  Am. Int'l Group, Inc. v. Cornerstone Businesses, Inc., 872 So.2d

333, 336 (Fla. 2d DCA 2004).  Generally, a parent corporation
which is not a signatory party to an agreement entered into by
its subsidiary is not liable for or bound by the terms of the
agreement.  <u>Federated Title Insurs., Inc. v. Ward</u>, 538 So.2d
890, 891 (Fla. 4th DCA 1989)(A parent corporation which is not
a signatory party to an agreement is not bound by the
agreement's provisions.)

In the definitions section of the policy, "Policy" is
defined as "the contract of insurance between you and us."
"Us" refers to "Unum Life Insurance Company of America." (Doc.
# 1-1 at 9).  Teytelbaum argues that the motion to dismiss is
premature and that discovery of Unum Group's corporate
structure may reveal facts supporting its liability for the
allegations set forth in the complaint.  Teytelbaum also
asserts that the law of Maine, rather than the law of Florida,
controls whether it is appropriate to maintain this action
against Unum Group.  Unum Group has not addressed this choice
of law issue, and the insurance policy before the Court is
silent on the choice of law issue.

At this early stage of the proceedings, the Court
determines that it is appropriate to allow Teytelbaum's action
to proceed against both Defendants.  A fact intensive inquiry
is required in order to determine whether Unum Group may be

11

held responsible for the alleged breach of contract.[1]
Further, the complaint as pled, alleges that both Defendants,
acting together, caused Teytelbaum's injuries.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

Unum Group's Motion to Dismiss (Doc. # 27) and Unum Life
Insurance Company of America's Motion to Dismiss, or in the
Alternative, Motion to Strike Teytelbaum's Claim for Recovery
Benefits (Doc. # 28) are **DENIED**.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this
<u>11th</u> day of November 2010.


_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

---

[1]   In an effort to demonstrate Unum Group's direct
involvement in the denial of her claims, Teytelbaum has
supplied the Court with documentation regarding Defendants'
intertwined corporate structures.   However, as with
Defendants' evidence, the Court declines to review
Teytelbaum's extrinsic materials.  At this juncture, the Court
confines it review to the four corners of the complaint.   In
addition, at this time, the Court declines to convert the
motions to dismiss into motions for summary judgment. <u>Harper
v. Lawrence County</u>, 592 F.3d 1227, 1232 (11th Cir. 2010)("A
judge need not convert a motion to dismiss into a motion for
summary judgment as long as he or she does not consider
matters outside of the pleadings.")

Copies: All Counsel of Record